**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Case No.: 2:26-cv-7774

DANIELLE JACKSON,

Plaintiff,

v.

AMERIHEALTH CARITAS
SERVICES, LLC,

Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff, **DANIELLE R. JACKSON** ("Plaintiff" or "Ms. Jackson"), by and through undersigned counsel, brings this action against Defendant, **AMERIHEALTH CARITAS SERVICES, LLC** ("Defendant" or "AmeriHealth Caritas"), arising from Defendant's unlawful disability discrimination, failure to provide reasonable accommodations, and retaliation following Plaintiff's brain surgery, extended medical leave, and return to employment with continuing neurological, visual, and balance-related impairments. Despite Defendant's knowledge of Plaintiff's serious medical condition, disability-related limitations, and requests for reasonable accommodation, Defendant subjected Plaintiff to heightened scrutiny, imposed

employment requirements inconsistent with her known medical limitations, and ultimately terminated her employment based upon disputed allegations of computer-related misconduct. Plaintiff brings claims pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); and the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, *et seq*. ("PFPO"), and alleges as follows:

## **NATURE OF THE ACTION**

1. This is an action for disability discrimination, failure to accommodate, and retaliation pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"); disability discrimination and failure to accommodate pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"); disability discrimination and retaliation pursuant to the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, et seq. ("PFPO"); and retaliation pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA").

2. This action arises from Defendant's discriminatory and retaliatory treatment of Plaintiff following her brain surgery, extended medical leave, and return to employment with continuing neurological, visual, and balance-

related impairments. Despite Defendant's knowledge of Plaintiff's serious medical condition, continuing disability-related limitations, and requests for reasonable accommodation, Defendant subjected Plaintiff to heightened managerial scrutiny, failed to reasonably accommodate her known medical limitations, and imposed employment requirements inconsistent with the fully remote nature of her position. Defendant thereafter relied upon disputed allegations of computer-related misconduct to terminate Plaintiff's employment approximately three months after her return from extended medical leave. Plaintiff alleges that Defendant's asserted justification for termination was pretextual and concealed unlawful discrimination and retaliation arising from her disability, requests for reasonable accommodation, and exercise of federally protected medical leave rights.

3. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial economic and noneconomic injuries, including lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, embarrassment, inconvenience, and mental anguish. Plaintiff seeks back pay, front pay, compensatory damages, punitive damages to the extent authorized by applicable law, liquidated damages under the FMLA, declaratory and equitable relief, reasonable attorney's fees, litigation costs, prejudgment and postjudgment

interest, and all other relief available under the respective statutes and ordinance, without duplicative recovery.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because Plaintiff asserts claims arising under federal law, including the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA").

5. This Court has authority to award legal, equitable, and other appropriate relief pursuant to 42 U.S.C. §§ 12117, 12203, and 1981a, and 29 U.S.C. § 2617, including compensatory damages, punitive damages where authorized, lost wages and employment benefits, liquidated damages, reasonable attorney's fees, costs, and other relief permitted by law.

6. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district, and Defendant conducts substantial business within the Commonwealth of Pennsylvania.

7. Accordingly, this Court possesses subject matter jurisdiction over Plaintiff's federal claims, and venue is proper within this judicial district.

## PARTIES

8. Plaintiff, DANIELLE R. JACKSON ("Plaintiff" or "Ms. Jackson"), is an adult individual who, at all times material hereto, was employed by Defendant, AMERIHEALTH CARITAS SERVICES, LLC, and was entitled to the protections afforded by the Americans with Disabilities Act of 1990, as amended ("ADA"), and the Family and Medical Leave Act ("FMLA").

9. Defendant, AMERIHEALTH CARITAS SERVICES, LLC ("Defendant" or "AmeriHealth Caritas"), is a business entity conducting substantial business within the Commonwealth of Pennsylvania, including within the Eastern District of Pennsylvania, and was Plaintiff's employer during the period relevant to this action.

10. At all times material hereto, Defendant was an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5), employing fifteen (15) or more employees for each working day in twenty (20) or more calendar weeks during the current or preceding calendar year.

11. At all times material hereto, Defendant was a covered employer within the meaning of the FMLA, 29 U.S.C. § 2611(4), employing fifty (50) or more employees for each working day during twenty (20) or more calendar workweeks in the current or preceding calendar year.

12. At all times material hereto, Plaintiff was an employee within the meaning of 42 U.S.C. § 12111(4) and 29 U.S.C. § 2611(2), and Defendant

exercised authority and control over the terms, conditions, privileges, supervision, discipline, and termination of Plaintiff's employment.

13. At all times material hereto, Defendant acted through its officers, managers, supervisors, human resources personnel, agents, and other authorized representatives, including individuals responsible for administering Plaintiff's medical leave, evaluating her employment performance, investigating alleged workplace misconduct, and determining whether to terminate her employment.

14. At all times material hereto, the acts and omissions of Defendant's officers, managers, supervisors, employees, and agents, as alleged herein, were undertaken within the course and scope of their employment or agency relationships with Defendant and are attributable to Defendant under applicable law.

## STATUTORY PREREQUISITES

15. Plaintiff has satisfied the applicable statutory prerequisites and conditions precedent to maintaining this action under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and asserts additional claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and the Philadelphia Fair Practices

Ordinance, Philadelphia Code § 9-1100, et seq. ("PFPO"), subject to the applicable requirements of those laws.

16. At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the ADA, capable of performing the essential functions of her position, with or without reasonable accommodation.

17. Plaintiff suffered from a serious medical condition necessitating brain surgery on or about July 25, 2024, and thereafter experienced continuing postoperative impairments, including double vision, balance difficulties, and other disability-related medical limitations.

18. Plaintiff's physical impairments substantially limited one or more major life activities and/or major bodily functions, thereby constituting a disability within the meaning of 42 U.S.C. § 12102. Alternatively, Plaintiff possessed a record of such impairment.

19. Defendant possessed actual knowledge of Plaintiff's serious medical condition, surgical intervention, extended medical leave, continuing treatment, and disability-related limitations through communications with Plaintiff, its Human Resources personnel, supervisory employees, and designated leave administrator.

20. At all times material hereto, Defendant was subject to the requirements and prohibitions of the ADA, including its obligations concerning

reasonable accommodation and its prohibitions against disability discrimination and retaliation.

21. Plaintiff engaged in activity protected by the ADA by requesting disability-related medical leave, communicating her continuing medical limitations, and requesting reasonable accommodation in connection with her employment.

22. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), bearing Charge No. 530-2025-04749, alleging disability discrimination and retaliation arising from Defendant's unlawful employment practices.

23. Plaintiff's Charge of Discrimination was dual-filed with the EEOC, the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human Relations ("PCHR") and expressly identified disability discrimination and retaliation, including retaliation arising from Plaintiff's request for reasonable accommodation.

24. On or about July 13, 2026, the EEOC issued Plaintiff a Dismissal and Notice of Rights authorizing the commencement of a civil action under the ADA.

25. Plaintiff has exhausted the administrative remedies applicable to her ADA claims and commenced this action within ninety (90) days following her receipt of the EEOC's Dismissal and Notice of Rights.

26. At all times material hereto, Plaintiff was an eligible employee within the meaning of 29 U.S.C. § 2611(2), having commenced employment with Defendant in November 2021 and having satisfied the applicable statutory requirements concerning length of employment and hours worked.

27. At all times material hereto, Defendant was a covered employer within the meaning of 29 U.S.C. § 2611(4), employing fifty (50) or more employees for each working day during twenty (20) or more calendar workweeks in the current or preceding calendar year.

28. Plaintiff was employed in a fully remote position. For purposes of determining FMLA eligibility, Plaintiff's applicable worksite is determined in accordance with 29 C.F.R. § 825.111(a)(2), including the office to which she reported or from which her assignments were made, rather than automatically treating her personal residence as the relevant worksite.

29. At all times material hereto, Defendant employed at least fifty (50) employees within seventy-five (75) miles of the office to which Plaintiff reported or from which her work assignments originated, thereby satisfying the applicable FMLA worksite eligibility requirements under 29 U.S.C. § 2611(2)(B)(ii) and 29 C.F.R. § 825.111(a)(2).

30. Plaintiff's serious medical condition, brain surgery, and postoperative recovery constituted a serious health condition within the

meaning of 29 U.S.C. § 2611(11), entitling her to qualifying medical leave under the FMLA.

31. Plaintiff provided Defendant with notice of her need for medical leave, obtained approval for qualifying leave, and exercised rights protected by the FMLA.

32. Defendant possessed actual knowledge of Plaintiff's exercise of FMLA-protected rights, including her medical leave, continuing recovery, communications concerning her anticipated return to work, and subsequent resumption of employment.

33. Plaintiff's claims under the FMLA are not subject to administrative exhaustion before the EEOC, and Plaintiff has satisfied the applicable prerequisites to maintaining those claims.

34. Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified individuals with disabilities in programs or activities receiving federal financial assistance.

35. Upon information and belief, Defendant receives federal financial assistance in connection with its healthcare-related operations. Thus, Section 504, 29 U.S.C. § 794 prerequisites are established.

36. Plaintiff was an otherwise qualified individual with a disability within the meaning of Section 504 and was capable of performing the essential functions of her position with or without reasonable accommodation.

37. Plaintiff's employment-discrimination claim under Section 504 is not subject to the ADA Title I administrative charge-filing prerequisite, and Plaintiff may pursue relief under the Rehabilitation Act where the statute's substantive coverage requirements are satisfied.

38. Defendant maintains its corporate headquarters in Philadelphia, Pennsylvania, and Plaintiff alleges that Defendant's employment practices and decisions concerning her employment bear a substantial connection to its Philadelphia operations.

39. Plaintiff asserts claims under the Philadelphia Fair Practices Ordinance for disability discrimination and retaliation, subject to establishing that the challenged employment practices fall within the ordinance's territorial and substantive coverage.

40. Plaintiff dual-filed her Charge of Discrimination with the EEOC and PHRC.

41. Plaintiff asserts her claims under the Philadelphia Fair Practices Ordinance based upon Defendant's alleged discriminatory and retaliatory employment practices within the territorial scope of the Ordinance and subject to the administrative prerequisites applicable to those claims.

42. Plaintiff seeks to pursue her federal claims and related municipal claims arising from the same employment relationship, alleged discriminatory and retaliatory practices, and termination of employment, subject to this

Court's original and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367.

43. Accordingly, Plaintiff seeks relief for Defendant's alleged violations of her rights under the ADA, FMLA, Rehabilitation Act, and PFPO, to the extent the statutory prerequisites and conditions governing each cause of action have been satisfied.

## FACTUAL ALLEGATIONS

44. Plaintiff, DANIELLE R. JACKSON ("Plaintiff" or "Ms. Jackson"), commenced her employment with Defendant, AMERIHEALTH CARITAS SERVICES, LLC ("Defendant" or "AmeriHealth Caritas"), on or about November 15, 2021, serving as a Credentialing Specialist.

45. In that capacity, Plaintiff was responsible for performing credentialing-related functions involving healthcare-provider records, maintaining and processing information within Defendant's credentialing systems, and completing administrative responsibilities necessary to Defendant's healthcare operations.

46. Plaintiff was employed in a fully remote position, performing one hundred percent (100%) of her assigned responsibilities remotely through computer equipment, electronic credentialing platforms, virtual private network ("VPN") connections, and other information technology systems utilized by Defendant.

47. Throughout her employment, Plaintiff possessed the requisite qualifications, experience, and ability to perform the essential functions of her position, with or without reasonable accommodation.

48. On or about July 25, 2024, Plaintiff underwent brain surgery necessitated by a serious medical condition requiring substantial medical intervention, continuing physician supervision, and an extended period of postoperative recovery.

49. Following her surgical procedure, Plaintiff experienced significant postoperative complications and continuing physical impairments, including double vision and balance difficulties.

50. Plaintiff's visual and balance-related impairments affected her ability to perform certain activities, including traveling considerable distances, and required continuing medical supervision and treatment.

51. Plaintiff's medical condition and resulting impairments substantially limited one or more major life activities and/or major bodily functions, thereby constituting a disability within the meaning of the ADA. Alternatively, Plaintiff had a record of such impairment.

52. As a consequence of her medical condition and surgical intervention, Plaintiff required an extended medical leave of absence to undergo treatment, recover from surgery, and obtain medical clearance before resuming her employment responsibilities.

53. Defendant approved Plaintiff's medical leave and possessed actual knowledge of her serious medical condition, surgical procedure, continuing treatment, and anticipated need for an extended recovery period.

54. Throughout her medical leave, Plaintiff maintained communications with Defendant and its designated leave administrator, including Unum, regarding her medical status, recovery, leave benefits, and anticipated return to employment.

55. Plaintiff's requests for medical leave and subsequent utilization of qualifying leave constituted the exercise of rights protected by the Family and Medical Leave Act.

56. Following the expiration of Plaintiff's FMLA-designated leave, Defendant continued Plaintiff's medical leave while she remained under medical care and recovered from her surgical procedure.

57. In or around January 2025, Defendant communicated further with Plaintiff concerning her anticipated return to employment and long-term disability matters.

58. Specifically, on or about January 6, 2025, and January 9, 2025, Defendant's Human Resources representative, Jacob Bononcini, communicated with Plaintiff regarding her employment status and anticipated return.

59. Plaintiff understood Defendant's communications to convey that she was expected to return to work or face the potential loss of her position, notwithstanding her continuing medical recovery.

60. These communications occurred while Defendant possessed actual knowledge of Plaintiff's brain surgery, continuing postoperative complications, and disability-related medical needs.

61. On or about February 10, 2025, Plaintiff received medical clearance authorizing her return to employment.

62. Plaintiff thereafter resumed her employment in February 2025, demonstrating her willingness and ability to perform the essential functions of her position.

63. Notwithstanding her return to employment, Plaintiff continued to experience disability-related medical needs, including double vision, balance difficulties, and the need for continuing physical therapy and neurological appointments.

64. Defendant possessed actual knowledge of Plaintiff's recent brain surgery, extended medical absence, continuing medical treatment, and disability-related limitations.

65. Following her return to employment in February 2025, Plaintiff advised Defendant of her continuing postoperative medical limitations and requested scheduling flexibility to attend physical therapy, neurological

appointments, and other medically necessary treatment associated with her recovery from brain surgery.

66. Plaintiff's requests for reasonable accommodation constituted protected activity under the ADA.

67. Following Plaintiff's return from medical leave, Defendant subjected her to increased managerial scrutiny, including scrutiny by Joanna Maloney and Christian Thomas.

68. This heightened scrutiny arose shortly after Plaintiff's extended medical absence and against the backdrop of Defendant's previous communications concerning the continued availability of her position.

69. Throughout her employment, Plaintiff experienced computer, equipment, login, VPN, and system-access difficulties affecting her remote work environment, including technical problems that predated her medical leave.

70. Plaintiff reported technical difficulties to Defendant's Help Desk and sought assistance in resolving equipment and system-related issues affecting her ability to perform her assigned responsibilities.

71. A Help Desk employee identified to Plaintiff as “Kam” possessed knowledge of, and/or provided assistance concerning, technical and equipment-related issues affecting Plaintiff's remote work environment.

72. In or around February 2025, shortly after Plaintiff returned from medical leave, Plaintiff reported continuing VPN-related difficulties affecting her ability to access Defendant's systems.

73. Rather than treating Plaintiff's reported technical difficulties solely as matters requiring investigation and technical assistance, Defendant subsequently subjected Plaintiff's computer activity to heightened scrutiny.

74. In or around March 2025, approximately one month after Plaintiff returned from extended medical leave, Defendant accused Plaintiff of utilizing a purported “mouse jiggler,” bypass device, screen-delay mechanism, or other means allegedly designed to simulate computer activity.

75. Plaintiff expressly denied knowingly utilizing any prohibited device or engaging in conduct intended to misrepresent her work activity.

76. Plaintiff utilized ordinary computer peripherals, including corded and wireless computer mice, in connection with her assigned employment responsibilities.

77. Defendant purportedly relied upon electronic monitoring information, including screenshots, recordings, computer activity logs, cursor movements, and/or cybersecurity data, to support its allegations of misconduct.

78. Plaintiff disputed Defendant's interpretation of the electronic information and maintained that the purported activity was susceptible to

explanations unrelated to intentional wrongdoing, including previously reported computer, VPN, equipment, and system-related difficulties.

79. Plaintiff alleges that Defendant lacked conclusive technical confirmation specifically establishing that she knowingly utilized a prohibited mouse-jiggling device.

80. Despite Plaintiff's denial and the existence of previously reported technical difficulties, Defendant advised Plaintiff that any recurrence of the alleged computer activity could result in termination of her employment.

81. In or around March 2025, Defendant further required Plaintiff to travel a considerable distance to its corporate office, notwithstanding her established status as a fully remote employee.

82. At the time Defendant imposed this requirement, Plaintiff continued to experience double vision, balance difficulties, and other postoperative limitations associated with her brain surgery.

83. Defendant was aware of Plaintiff's recent surgical intervention, extended medical recovery, and continuing disability-related medical circumstances.

84. Plaintiff alleges that requiring her to travel to the corporate office under these circumstances imposed additional difficulties associated with her disability and was inconsistent with the remote nature of her established position.

85. Defendant did not compensate Plaintiff for the travel required in connection with the corporate-office visit.

86. Reasonable alternatives potentially available to Defendant included remote participation, modified attendance arrangements, or other adjustments responsive to Plaintiff's known medical limitations and the requirements of her position.

87. Plaintiff alleges that Defendant failed to provide an effective reasonable accommodation responsive to her disability-related limitations and requests.

88. Plaintiff further alleges that Defendant failed to engage meaningfully in the interactive process necessary to identify and implement an appropriate reasonable accommodation.

89. Defendant's treatment of Plaintiff following her return from medical leave, including heightened scrutiny, disputed allegations of computer-related misconduct, and the requirement that she travel to the corporate office despite continuing visual and balance difficulties, occurred against the backdrop of Defendant's knowledge of her disability and requests for accommodation.

90. Thereafter, Defendant asserted that substantially similar computer activity occurred again in late April or early May 2025.

91. On or about May 8, 2025, approximately three months after Plaintiff returned from extended medical leave following brain surgery, Defendant terminated Plaintiff's employment, purportedly based upon the recurrence of prohibited computer activity.

92. Plaintiff disputes Defendant's asserted justification for termination and maintains that she did not knowingly engage in the misconduct attributed to her.

93. Following her termination, Plaintiff applied for unemployment compensation, and her application was initially denied.

94. Plaintiff contested the denial and communicated with her unemployment representative concerning the circumstances of her discharge.

95. Plaintiff alleges that Defendant's asserted justification for terminating her employment was false, mistaken, pretextual, and/or utilized to conceal discriminatory and retaliatory motives arising from her disability, extended medical leave, continuing medical needs, and requests for reasonable accommodation.

96. The sequence of events preceding Plaintiff's termination—including her brain surgery, protected medical leave, Defendant's communications concerning the continued availability of her position, her return to employment with continuing visual and balance impairments, her requests for accommodation, increased managerial scrutiny, disputed

allegations of computer-related misconduct, and ultimate termination—supports a reasonable inference of unlawful discrimination and retaliation.

97. Defendant's adverse treatment of Plaintiff occurred with actual knowledge of her disability, record of impairment, medical history, protected leave, continuing disability-related medical needs, and requests for accommodation.

98. Plaintiff alleges that her disability and/or record of impairment was a legally sufficient cause of Defendant's decision to terminate her employment and that Defendant's stated justification was pretextual.

99. Plaintiff further alleges that her requests for reasonable accommodation and exercise of rights protected by the ADA and FMLA were causally connected to Defendant's adverse treatment and ultimate termination decision.

100. Defendant's conduct constituted unlawful disability discrimination, failure to accommodate, and retaliation under the ADA, as well as retaliation for Plaintiff's exercise of rights protected by the FMLA.

101. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, embarrassment, inconvenience, mental anguish, and other damages recoverable under applicable law.

102. Following her termination, Plaintiff undertook reasonable efforts to mitigate her economic losses by seeking alternative employment and ultimately securing subsequent employment. Notwithstanding those efforts, Plaintiff sustained financial losses attributable to Defendant's challenged employment practices.

103. Defendant's discriminatory and retaliatory conduct was intentional and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby supporting an award of compensatory and, where authorized by law and established by the evidence, punitive damages.

## COUNT I — DISABILITY DISCRIMINATION
**Violation of the Americans with Disabilities Act of 1990, as Amended**
**42 U.S.C. § 12112(a)**

104. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105. At all times material hereto, Defendant was an employer subject to the provisions of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Plaintiff was entitled to the protections afforded thereunder.

106. Plaintiff was an individual with a disability within the meaning of 42 U.S.C. § 12102, having undergone brain surgery for a serious medical condition that substantially limited one or more major life activities and/or major bodily functions. Alternatively, Plaintiff possessed a record of such impairment, independently qualifying her for protection under the ADA.

107. Defendant possessed actual knowledge of Plaintiff's disability and medical history, including her brain surgery, extended medical leave, postoperative recovery, continuing neurological treatment, physical therapy, and ongoing disability-related medical needs.

108. At all times material hereto, Plaintiff was qualified to perform the essential functions of her position as a Credentialing Specialist, with or without reasonable accommodation, as demonstrated by her qualifications, employment history, medical clearance, and return to active employment in February 2025.

109. Notwithstanding Plaintiff's qualifications and ability to perform her employment responsibilities, Defendant subjected her to materially adverse employment treatment following her return from extended medical leave, culminating in the termination of her employment on May 8, 2025.

110. Defendant's adverse treatment occurred after its Human Resources representative questioned Plaintiff's anticipated return to employment and communicated information leading Plaintiff to believe that her position might not remain available during her continued medical recovery.

111. Following Plaintiff's return, Defendant subjected her to increased managerial scrutiny and subsequently accused her of utilizing a prohibited computer device to simulate work activity, notwithstanding Plaintiff's express

denial of intentional misconduct and her previously reported computer and system-related difficulties.

112. Defendant thereafter relied upon an alleged recurrence of substantially similar computer activity as the purported basis for terminating Plaintiff's employment approximately three months after her return from extended medical leave.

113. Plaintiff disputes Defendant's asserted justification and alleges that the purported misconduct was either incorrectly attributed to her, improperly interpreted, or otherwise utilized as a pretext for unlawful disability discrimination.

114. The timing and circumstances surrounding Defendant's actions, including its knowledge of Plaintiff's disability, communications concerning her return to work, heightened scrutiny following her medical leave, disputed allegations of misconduct, and ultimate termination, support a reasonable inference that Plaintiff's disability and/or record of impairment was a motivating and determinative cause of Defendant's adverse employment decision.

115. Defendant's stated reason for Plaintiff's termination was not the true reason for its decision but instead served to conceal discriminatory treatment prohibited by the ADA.

116. By terminating Plaintiff because of her disability and/or record of impairment, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment in violation of 42 U.S.C. § 12112(a).

117. Defendant's discriminatory conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights, thereby supporting an award of compensatory and punitive damages to the extent authorized by 42 U.S.C. § 1981a.

118. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, mental anguish, inconvenience, and other compensable injuries.

WHEREFORE, Plaintiff, DANIELLE R. JACKSON, respectfully demands judgment against Defendant, AMERIHEALTH CARITAS SERVICES, LLC, for back pay, front pay or reinstatement as appropriate, lost employment benefits, compensatory damages, punitive damages to the extent permitted by law, prejudgment and postjudgment interest, reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205, equitable relief, and such other and further relief as this Court deems just and proper.

## COUNT II — ADA RETALIATION

**Violation of the Americans with Disabilities Act of 1990, as Amended**
**42 U.S.C. § 12203(a)**

119. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

120. At all times material hereto, Defendant was an employer subject to the provisions of the Americans with Disabilities Act of 1990, as amended ("ADA"), including its express prohibition against retaliation under 42 U.S.C. § 12203(a).

121. The ADA prohibits an employer from discriminating against an individual because that individual has opposed an act or practice made unlawful by the ADA or has exercised rights protected by the statute.

122. Plaintiff engaged in protected activity under the ADA by requesting and utilizing disability-related medical leave, communicating with Defendant concerning her medical limitations, and seeking scheduling flexibility for continuing neurological treatment, physical therapy, and other disability-related medical appointments.

123. Plaintiff's disability-related communications and requests constituted efforts to obtain reasonable accommodation and otherwise exercise rights protected by the ADA.

124. Defendant possessed actual knowledge of Plaintiff's protected activity through its Human Resources personnel, designated leave administrator, supervisory employees, and other authorized representatives.

125. Rather than respecting Plaintiff's exercise of her federally protected rights, Defendant subjected Plaintiff to adverse treatment following her extended medical leave and subsequent return to employment.

126. In January 2025, while Plaintiff remained in recovery from brain surgery, Defendant's Human Resources representative communicated with Plaintiff concerning her anticipated return to employment and the potential consequences of her continued absence, causing Plaintiff to reasonably question whether her position would remain available.

127. Following Plaintiff's return to employment in February 2025, Defendant subjected her to increased managerial scrutiny, including scrutiny by Joanna Maloney and Christian Thomas.

128. In March 2025, Defendant accused Plaintiff of utilizing a purported computer bypass device or “mouse jiggler” to simulate work activity, notwithstanding Plaintiff's denial of intentional misconduct and the existence of previously reported computer, equipment, and system-related difficulties.

129. Defendant thereafter asserted that similar computer activity had recurred and relied upon that allegation to terminate Plaintiff's employment on May 8, 2025, approximately three months after she returned from extended medical leave.

130. Plaintiff expressly disputes Defendant's asserted justification for termination and alleges that the purported misconduct was incorrectly

attributed to her, improperly interpreted, or otherwise employed as a pretext for unlawful retaliation.

131. The temporal proximity between Plaintiff's return from disability-related medical leave, her continuing need for medical treatment, Defendant's heightened scrutiny, and her subsequent termination, considered together with Defendant's prior communications concerning the availability of her position, supports a reasonable inference of retaliatory intent.

132. Defendant's adverse actions were not isolated or unrelated employment decisions but formed part of a course of conduct that followed Plaintiff's exercise of rights protected by the ADA.

133. Plaintiff alleges that Defendant would not have subjected her to the same adverse employment treatment, culminating in termination, but for her engagement in protected activity under the ADA.

134. Defendant's stated justification for Plaintiff's termination was pretextual and concealed its unlawful retaliatory motive.

135. By subjecting Plaintiff to materially adverse employment actions, including termination, because she exercised rights protected by the ADA, Defendant violated 42 U.S.C. § 12203(a).

136. Defendant's retaliatory conduct was intentional, willful, and undertaken with knowledge of Plaintiff's federally protected rights.

137. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, mental anguish, inconvenience, and other injuries for which relief is available under applicable law.

**COUNT III – FAILURE TO ACCOMMODATE**
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A)**

138. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

139. At all times material hereto, Defendant was an employer subject to the Americans with Disabilities Act of 1990, as amended ("ADA"), including its affirmative obligation to provide reasonable accommodations to qualified individuals with disabilities absent a showing of undue hardship.

140. Plaintiff was a qualified individual with a disability within the meaning of the ADA, having undergone brain surgery on or about July 25, 2024, and subsequently experiencing continuing visual disturbances, including double vision, balance difficulties, and other postoperative medical limitations.

141. Defendant possessed actual knowledge of Plaintiff's disability, surgical intervention, extended medical leave, continuing treatment, and disability-related limitations.

142. Plaintiff had performed her responsibilities as a Credentialing Specialist remotely and was capable of performing the essential functions of her position with reasonable accommodation.

143. Plaintiff communicated her disability-related medical circumstances and requested reasonable accommodation in connection with her continued employment and recovery from brain surgery.

144. In or around March 2025, Defendant required Plaintiff to travel a considerable distance to its corporate office notwithstanding her continuing visual and mobility-related limitations.

145. Defendant imposed that requirement despite its knowledge of Plaintiff's recent brain surgery and continuing medical difficulties, including double vision and impaired balance.

146. Reasonable accommodations potentially available to Defendant included permitting Plaintiff to participate remotely in required meetings or proceedings, modifying attendance arrangements, or otherwise engaging in an individualized assessment of accommodations that would permit Plaintiff to comply with legitimate employment requirements without unnecessarily aggravating her disability-related limitations.

147. Defendant failed to provide Plaintiff with an effective reasonable accommodation responsive to her known limitations and accommodation request.

148. Plaintiff alleges that Defendant failed to engage meaningfully and in good faith in the interactive process necessary to identify and implement an appropriate accommodation.

149. Defendant's failure to accommodate Plaintiff's known disability-related limitations was not justified by undue hardship and deprived Plaintiff of equal employment opportunities and the benefits and privileges of employment.

150. Defendant's conduct constituted unlawful discrimination under 42 U.S.C. § 12112(b)(5)(A).

151. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained compensable economic and noneconomic injuries, including inconvenience, emotional distress, humiliation, and other damages attributable to Defendant's failure to accommodate her disability.

**WHEREFORE**, Plaintiff, DANIELLE R. JACKSON, respectfully demands judgment against Defendant, AMERIHEALTH CARITAS SERVICES, LLC, for compensatory damages, punitive damages to the extent authorized by law, appropriate equitable relief, reasonable attorney's fees and costs, applicable interest, and such other and further relief as this Court deems just and proper.

## COUNT IV — DISABILITY DISCRIMINATION
**Violation of the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1103(1)(a)**

152. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

153. At all times material hereto, Defendant was an employer subject to the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, et seq. ("PFPO"), and Plaintiff was entitled to the protections afforded thereunder.

154. The PFPO expressly prohibits employers from discharging or otherwise discriminating against individuals because of disability with respect to the terms, conditions, privileges, and opportunities of employment.

155. Plaintiff was an individual with a disability within the meaning of the PFPO, having suffered a serious medical condition necessitating brain surgery, extended postoperative recovery, and continuing medical treatment. Alternatively, Plaintiff possessed a record of such impairment.

156. Defendant possessed actual knowledge of Plaintiff's disability, including her surgical intervention, extended medical leave, continuing neurological treatment, physical therapy, and disability-related medical needs.

157. Plaintiff was qualified to perform the essential functions of her position as a Credentialing Specialist, with or without reasonable accommodation, and returned to active employment following medical clearance in February 2025.

158. Notwithstanding Plaintiff's qualifications and demonstrated ability to perform her employment responsibilities, Defendant subjected her to increased managerial scrutiny following her return from medical leave and subsequently accused her of engaging in computer-related misconduct.

159. Plaintiff denied knowingly utilizing any prohibited device or intentionally misrepresenting her work activity and disputed Defendant's interpretation of the electronic information purportedly supporting its allegations.

160. Defendant possessed knowledge of Plaintiff's previously reported computer, equipment, and system-access difficulties, yet relied upon disputed allegations of prohibited computer activity to terminate her employment on May 8, 2025.

161. The circumstances surrounding Plaintiff's termination, including Defendant's knowledge of her disability, its communications concerning her anticipated return to employment, heightened scrutiny following her medical leave, and reliance upon disputed allegations of misconduct, support a reasonable inference of unlawful disability discrimination.

162. Plaintiff alleges that Defendant's stated justification for terminating her employment was pretextual and that her disability and/or record of impairment was a cause of Defendant's adverse employment decision.

163. By subjecting Plaintiff to discriminatory treatment and ultimately terminating her employment because of her disability and/or record of impairment, Defendant violated Philadelphia Code § 9-1103(1)(a).

164. Defendant's discriminatory conduct was intentional and undertaken with knowledge of Plaintiff's protected status and rights under the PFPO.

165. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, embarrassment, mental anguish, and other compensable injuries.

**WHEREFORE**, Plaintiff, DANIELLE R. JACKSON, respectfully demands judgment against Defendant, AMERIHEALTH CARITAS SERVICES, LLC, for compensatory damages, punitive damages as authorized by Philadelphia Code § 9-1122, back pay, front pay or reinstatement as appropriate, lost employment benefits, equitable relief, reasonable attorney's fees, litigation costs, applicable interest, and such other and further relief as this Court deems just and proper.

## COUNT V — RETALIATION
## Violation of the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1103(1)(g)

166. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

167. At all times material hereto, Defendant was subject to the Philadelphia Fair Practices Ordinance, including its express prohibition against retaliation under Philadelphia Code § 9-1103(1)(g).

168. The PFPO prohibits employers from penalizing, retaliating against, or otherwise discriminating against individuals because they have exercised rights protected by the ordinance or sought the benefits and protections afforded thereunder.

169. Plaintiff engaged in activity protected by the PFPO by requesting and utilizing disability-related medical leave, communicating her medical limitations and continuing treatment needs, and seeking disability-related scheduling flexibility in connection with her return to employment.

170. Defendant possessed actual knowledge of Plaintiff's protected activity through its Human Resources personnel, designated leave administrator, supervisory employees, and other authorized representatives.

171. Rather than permitting Plaintiff to exercise her protected rights without adverse consequences, Defendant subjected her to increased scrutiny and materially adverse employment treatment following her return from extended medical leave.

172. Defendant's Human Resources communications in January 2025 concerning Plaintiff's anticipated return to employment, followed by increased

scrutiny after her return in February 2025, provide relevant circumstances supporting an inference of retaliatory intent.

173. In March 2025, Defendant accused Plaintiff of utilizing a purported prohibited computer device to simulate work activity, notwithstanding Plaintiff's denial of intentional misconduct and previously reported technical difficulties.

174. Defendant thereafter asserted a recurrence of substantially similar computer activity and terminated Plaintiff's employment on May 8, 2025, approximately three months after her return from extended medical leave.

175. Plaintiff disputes Defendant's asserted justification for termination and alleges that the purported misconduct was incorrectly attributed to her, improperly interpreted, or otherwise employed as a pretext for unlawful retaliation.

176. The temporal relationship between Plaintiff's disability-related communications, return to employment, increased managerial scrutiny, and subsequent termination, considered together with Defendant's knowledge of her medical circumstances, supports a reasonable inference that Defendant acted with retaliatory intent.

177. Plaintiff alleges that Defendant's adverse employment actions were causally connected to her exercise of rights protected by the PFPO and that Defendant's asserted justification concealed its retaliatory motive.

178. By subjecting Plaintiff to materially adverse employment treatment, culminating in termination, because she exercised rights protected by the PFPO, Defendant violated Philadelphia Code § 9-1103(1)(g).

179. Defendant's retaliatory conduct was intentional and undertaken with knowledge of Plaintiff's protected activity and the rights afforded to her under the PFPO.

180. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff sustained lost wages, lost employment benefits, diminished earning opportunities, emotional distress, humiliation, embarrassment, mental anguish, and other compensable injuries.

WHEREFORE, Plaintiff, DANIELLE R. JACKSON, respectfully demands judgment against Defendant, AMERIHEALTH CARITAS SERVICES, LLC, for back pay, lost employment benefits, reinstatement or front pay where appropriate, compensatory damages, punitive damages to the extent authorized by Philadelphia Code § 9-1122, declaratory and injunctive relief, reasonable attorney's fees, litigation costs, applicable prejudgment and postjudgment interest, and such other and further relief as this Court deems just and proper under the Philadelphia Fair Practices Ordinance.

## COUNT VI — FMLA RETALIATION
**Violation of the Family and Medical Leave Act 29 U.S.C. § 2615(a)(1)**

181. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

182. At all times material hereto, Defendant was a covered employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), and Plaintiff was an eligible employee entitled to the protections afforded thereunder.

183. The FMLA prohibits employers from interfering with, restraining, or denying the exercise of rights protected by the statute, including retaliating against employees for requesting or utilizing protected medical leave.

184. Plaintiff suffered from a serious health condition within the meaning of 29 U.S.C. § 2611(11), necessitating brain surgery on or about July 25, 2024, followed by substantial postoperative recovery, continuing medical treatment, and an extended absence from employment.

185. Plaintiff provided Defendant with notice of her serious health condition and corresponding need for medical leave, and Defendant approved her absence, including leave designated as protected under the FMLA.

186. Plaintiff exercised her federally protected rights by requesting and utilizing FMLA leave for her serious health condition, maintaining

communications concerning her recovery, and subsequently returning to employment following medical clearance.

187. Defendant possessed actual knowledge of Plaintiff's exercise of FMLA-protected rights through its Human Resources personnel, supervisory employees, and designated leave administrator, Unum.

188. Notwithstanding Defendant's knowledge of Plaintiff's protected medical leave, its Human Resources representative, Jacob Bononcini, contacted Plaintiff on or about January 6 and January 9, 2025, concerning her anticipated return to employment and long-term disability matters, causing Plaintiff to question whether her position would remain available during her continued medical recovery.

189. On or about February 10, 2025, Plaintiff received medical clearance to return to employment and thereafter resumed her duties as a Credentialing Specialist.

190. Following Plaintiff's return, Defendant subjected her to increased managerial scrutiny, including scrutiny by Joanna Maloney and Christian Thomas.

191. In or around March 2025, Defendant accused Plaintiff of utilizing a purported “mouse jiggler” or other prohibited computer device to simulate work activity, notwithstanding Plaintiff's denial of intentional misconduct and her previously reported computer, equipment, and system-access difficulties.

192. Defendant subsequently alleged a recurrence of similar computer activity in late April or early May 2025 and relied upon that allegation to terminate Plaintiff's employment on May 8, 2025.

193. Plaintiff expressly disputes Defendant's asserted justification for termination and alleges that Defendant improperly interpreted, incorrectly attributed, or otherwise relied upon the purported computer activity to justify an adverse employment decision motivated, at least in part, by Plaintiff's prior exercise of FMLA-protected rights.

194. Defendant's treatment of Plaintiff following her return from medical leave, including heightened scrutiny, disputed allegations of misconduct, and termination approximately three months after her return, supports a reasonable inference that Plaintiff's utilization of protected medical leave was a negative factor in Defendant's employment decision.

195. Plaintiff alleges that Defendant's stated reason for terminating her employment was pretextual and that her exercise of FMLA-protected rights was a negative factor in the decision to terminate her employment.

196. By considering Plaintiff's exercise of FMLA-protected rights as a negative factor in its employment decision and terminating her employment in retaliation for utilizing protected medical leave, Defendant violated 29 U.S.C. § 2615(a)(1) and the implementing regulations, including 29 C.F.R. § 825.220(c).

197. Defendant's violation of the FMLA was willful, in that Defendant knew or showed reckless disregard for whether its conduct violated Plaintiff's federally protected rights.

198. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered lost wages, lost employment benefits, other actual monetary losses recoverable under the FMLA, and additional economic injuries attributable to the termination of her employment.

199. Plaintiff is entitled to recover the damages and equitable relief authorized by 29 U.S.C. § 2617, including lost compensation and benefits, applicable interest, an additional equal amount as liquidated damages unless Defendant establishes the statutory good-faith defense, and appropriate equitable relief.

## COUNT VII — DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

200. Plaintiff realleges and incorporates by reference Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

201. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits disability discrimination in programs or activities receiving federal financial assistance, including unlawful disability-based employment practices and failures to provide reasonable accommodation.

202. Upon information and belief, Defendant receives federal financial assistance in connection with its healthcare-related programs or activities and is subject to Section 504 of the Rehabilitation Act.

203. Plaintiff was an otherwise qualified individual with a disability within the meaning of Section 504, having undergone brain surgery and experienced continuing postoperative impairments affecting her vision, balance, and other major life activities.

204. Defendant possessed actual knowledge of Plaintiff's disability, medical history, continuing treatment, and disability-related limitations.

205. Plaintiff was qualified to perform the essential functions of her position as a Credentialing Specialist, with or without reasonable accommodation, and returned to active employment following medical clearance in February 2025.

206. Notwithstanding Plaintiff's qualifications and Defendant's knowledge of her disability, Defendant failed to provide effective reasonable accommodation for her known medical limitations, including in connection with its requirement that Plaintiff travel to its corporate office despite continuing visual and balance difficulties.

207. Following Plaintiff's return from extended medical leave, Defendant also subjected her to increased managerial scrutiny, accused her of

computer-related misconduct that she disputed, and terminated her employment on May 8, 2025.

208. Plaintiff alleges that Defendant's failure to accommodate her known limitations and its subsequent adverse employment actions were motivated by unlawful disability-based considerations.

209. Defendant's stated justification for Plaintiff's termination was pretextual and concealed discriminatory treatment arising from Plaintiff's disability and continuing medical limitations.

210. Plaintiff alleges that Defendant discriminated against her solely by reason of her disability within the meaning of Section 504 by denying reasonable accommodation and subjecting her to adverse employment treatment culminating in termination.

211. Defendant's conduct constituted intentional disability discrimination in violation of 29 U.S.C. § 794 and the employment-discrimination standards incorporated through 29 U.S.C. § 794(d).

212. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, diminished earning opportunities, and other economic injuries for which relief is available under Section 504 of the Rehabilitation Act of 1973, together with appropriate equitable relief and other remedies authorized by applicable law.

WHEREFORE, Plaintiff, DANIELLE R. JACKSON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, AMERIHEALTH CARITAS SERVICES, LLC, on all Counts of this Complaint, and award the following relief:

A. Declaratory Relief. A declaration that Defendant's conduct constituted unlawful disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended (“ADA”), and unlawful retaliation in violation of the Family and Medical Leave Act (“FMLA”);

B. Back Pay and Lost Benefits. An award of back pay, including lost wages, salary, bonuses, employment benefits, and other compensation Plaintiff would have received but for Defendant's unlawful conduct, together with applicable prejudgment interest;

C. Front Pay. An award of front pay where reinstatement is impracticable or otherwise inappropriate;

D. Compensatory Damages. An award of compensatory damages under the ADA for Plaintiff's emotional distress, mental anguish, humiliation, embarrassment, inconvenience, and other noneconomic injuries resulting from Defendant's unlawful disability discrimination, subject to applicable statutory limitations;

E. Punitive Damages. An award of punitive damages pursuant to 42 U.S.C. § 1981a, to the extent authorized by law, based upon Defendant's intentional discriminatory conduct undertaken with malice or reckless indifference to Plaintiff's federally protected rights;

F. FMLA Damages. An award of damages pursuant to 29 U.S.C. § 2617(a)(1), including lost compensation, employment benefits, other actual monetary losses recoverable under the statute, and applicable interest;

G. **Rehabilitation Act Relief.** An award of all legal and equitable relief authorized under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, including back pay, lost employment benefits, reinstatement or front pay where appropriate, declaratory and injunctive relief, reasonable attorney's fees and litigation costs pursuant to 29 U.S.C. § 794a(b), applicable interest, and such other relief as may be authorized by law, without duplicative recovery.

H. **Philadelphia Fair Practices Ordinance Relief.** An award of all legal and equitable relief authorized under the Philadelphia Fair Practices Ordinance, Philadelphia Code § 9-1100, *et seq.*, including back pay, lost wages and employment benefits, reinstatement or front pay where appropriate, compensatory damages for emotional distress, humiliation, embarrassment, mental anguish, and other legally cognizable injuries, punitive damages to the extent authorized by Philadelphia Code § 9-1122, reasonable attorney's fees,

litigation costs, applicable interest, declaratory and injunctive relief, and such other relief as this Court deems just and proper under applicable law.

I. Liquidated Damages. An additional amount equal to the compensation, benefits, and interest recoverable under the FMLA, as liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), unless Defendant establishes the statutory defense;

J. Equitable Relief. Appropriate equitable relief to remedy Defendant's unlawful employment practices and restore Plaintiff, insofar as practicable, to the position she would have occupied absent Defendant's violations of federal law;

K. Attorney's Fees and Costs. An award of reasonable attorney's fees, expert fees where authorized, litigation expenses, and taxable costs pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), and other applicable provisions of law;

L. Interest. An award of prejudgment and postjudgment interest to the extent permitted by applicable law;

M. Other Relief. Such other and further legal or equitable relief as this Court deems just, proper, and appropriate under the circumstances.

Plaintiff requests that any recovery under the ADA, FMLA, Rehabilitation Act, and the PFPO be awarded in accordance with the remedies authorized by each statute, without duplicative recovery for the same injury.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff, DANIELLE R. JACKSON, hereby demands trial by jury on all issues and claims so triable as a matter of right.

*/s/ Steven T. Auerbach*
STEVEN T. AUERBACH
Pennsylvania Bar No. 317309
**LAW OFFICE OF STEVEN T. AUERBACH**
150 Monument Road, Suite 207
Bala Cynwyd, PA 19004
Telephone Number: (484) 430-4391
*Pro Hac Vice Sponsor*

*/s/ Richard A. Jones*
RICHARD A. JONES–Lead Counsel
Florida Bar No. 1057471
**RICH LAW GROUP, PLLC**
1000 Brickell Ave. Ste. 175 PMB
Miami, Florida 33131
Richard@richjoneslaw.com
Telephone Number: (202) 317-2805
*Lead Counsel for Plaintiff Danielle R. Jackson*

/s/ *Julien W. Maynard*
JULIEN W. MAYNARD, Esq.–Of Counsel
Florida Bar No. 1035332
**WINSTON MAYNARD LAW, PLLC**
821 Herndon Avenue #141094
Orlando, Florida, 32814
JMaynard@WinstonMaynardLaw.com
WinstonMaynardLaw.com
Telephone Number: (407) 721-3795
*Counsel for Plaintiff Danielle R. Jackson*